I'd first like to talk about the vouching issue with respect to the case agent in the case, move on to the issue with minor role, and then I'd like to reserve three minutes for rebuttal. If you want rebuttal, the clerk will probably prompt you, but we don't seem to care much about that. We just continue to ask you questions, so you'll have to watch your own time. The ultimate question for the jury in this case was whether Ms. Wyly had taken the photograph of Joshua Wyly and Sierra. And here, multiple times, the case agent stated her belief that Ms. Wyly had actually taken the photograph, and then the prosecutor went further and asked her to state the reasons why she believed that Ms. Wyly had taken those photographs. That constitutes vouching, it's overly prejudicial, and it's irrelevant. But in closing argument, the prosecutor went further. Not only did she talk about, again, she restated Agent Cishan's belief that Ms. Wyly had taken the photograph, she also talked about something that hadn't been introduced in the case, nor was it admissible. In talking about this belief, Agent Cishan's belief, the prosecutor said, you also heard testimony generally that Sierra had been forensically interviewed, and Agent Cishan was privy to that, to what Sierra said in those forensic interviews, and that's in ER 557. And so that evidence obviously was not introduced in the case, the content of the forensic interviews, nor would it have been admissible. But who first brought out the fact that Sierra was interviewed? Wasn't it the defense during direct examination of its own witnesses? Not during direct examination. It was during the cross-examination of the case agent. And so during the cross-examination of the case agent, we went through the investigative steps that had been taken by the agent, which we proffered we did believe were relevant. It was relevant to discuss what it was that the agent had done and what the agent hadn't done. But the conclusion... So through the defense questioning of the case agent, the fact that Sierra was interviewed was elicited and was before the jury. Is that right? Correct. But not the fact, not the conclusions that agent, that the case agent drew about the forensic interview. That was improper, because the case agent can talk about the investigation that she undertook, but she can't testify about her belief in a defendant's guilt or her belief that the defendant committed a crime. Well, if you're going to bring up the interviews themselves and you're going to bring up the statements, if you will, I guess I'm having a tough time why you didn't open the door. Well, two reasons. If you bring it up, you put yourself on the line, remembering that I was a trial lawyer one time, and that's why I stayed away from those things, because I could always get myself in trouble when I did that. Well, there were two reasons. One, this happened at cross-examination, what Your Honor is suggesting. But cross-examination nonetheless by you. But already during direct examination, the agent had already testified that she believed that Ms. Riley was guilty. That had happened the day before. And so then the prosecutor asked her to state the reasons, and she said three reasons. The interview with the victim's mother, the forensic results of the picture, and an interview with Ms. Riley. So she had already drawn the conclusion that Ms. Riley or had already testified about her belief in Ms. Riley's guilt. That was the day before this whole question was mentioned about the forensic interview. Did you object then when those questions were asked, if in fact they were? Because I'll be fair, there's many times when I'm trying to focus on individual questioning, if you will, and what happened in the trial and when you objected and when you didn't. So maybe I'm a little worried, but I don't think you necessarily objected to what you're now suggesting is bad, if you will, referenced by the prosecutor. As soon as the case agent said that she believed that Ms. Riley had taken the photograph, we objected as to vouching. That was the first day. And so if I look at that particular question, can I really find vouching? So what the prosecutor said was, I'm sorry, I'll start with what Agent Cishon says. I received information that led me to believe that the defendant was involved in taking the photographs. Later, I began to think that if they were never alone and she was there, it's a very small apartment. I just began to think that maybe she was involved. All of these were objected to on this case. On vouching. Every time vouching, right? Correct. Although the second day, during when she first mentioned the interview, the forensic interview, and how that affected her belief in Ms. Riley's guilt, I did say at a sidebar, and the Court brought up this issue that this Court is bringing up, if those investigations which you brought out led her to believe, led her to think further that Rachel Riley took those pictures having to open the door to that man, and I said, no, because it's not relevant. It's absolutely prejudicial. Her belief is not relevant. Her conduct as the case agent, the investigation she undertook, that's relevant. But her belief isn't, and that's vouching. Sure. And that strikes at a concern that this Court has expressed in U.S. v. Wright, the idea that a jury is left to believe that there's information that they're not privy to that supports the credibility of an agent. And that's what happened here. The interrogation wasn't introduced, nor was it admissible. And if case agents are allowed to testify about their belief that a defendant committed the acts that they're charged with, what's the point of having a jury? It hijacks the role of the jury to decide the ultimate question. So what is my standard review on this? Even if I were to find what you're suggesting is error, what's the ultimate of what I have to do in these cases where we're just talking about whether evidence ought to come in or not? Because whether evidence comes in or not, the old DJ is in charge of that. And I can only suggest that the DJ is wrong if he has abused his discretion. So the first hurdle you have to cross is abuse of discretion. And the next hurdle you have to cross is what? Even if he did abuse his discretion, what is the last standard that I look at? Well, the Court has to find that it was harmful. Harmful. Correct. So it's got to be so it's, again, subject to harmless error review. Are you saying there's just not enough testimony, not enough evidence here? Yes. That's absolutely what we're saying. The government has to prove that it is more probable than not that the error did not materially affect the verdict. And here there was no direct evidence. The case was circumstantial. There were two people who were in that photograph, Joshua Wiley, Sierra. Neither of them testified in the trial. Well, there were the recorded calls, which I think presented fairly compelling proof. When you're confronted with an accusation of participating in a crime as serious as this one, you would think an average person's immediate reaction would be denial. Certainly the government was entitled to argue that that was an inference that the jury could have. But it wasn't a confession. And she testified. She explained why she didn't deny it. She said she was distracted. She gave a plausible explanation as to why she didn't deny it. Well, the jury rejected that, apparently. But it was also. Returning a verdict of guilty, the jury rejected her testimony. But it was also presented with highly prejudicial testimony in the form of the case agent's belief that the defendant was guilty. Also, Judge Gould, if I could interject a quick question. What bothered me about your side of the case in terms of harmlessness is that even if this case agent went too far and you view what she said as vouching, still there were the qualified admissions, you might say, by your client on the phone when she's calling. She doesn't deny. She has an explanation. But still, she doesn't deny the allegation the way a normal person would do in those circumstances. And in addition, you have Mark and his girlfriend or wife saying that when they confronted her in a parking lot in a car accident, she sort of slumped down in her seat after they confronted her, which they viewed as sort of an admission. So why, if you look at all that evidence, plus in one of the pictures, the guy's hands are at his side, so you know someone else took the picture. Why isn't all that sufficient so that even if it was vouching, it wasn't harmless or it was harmless? Well, here, it's the government that has to prove that it was more probable than not that it didn't, that the error didn't materially affect the verdict. Certainly, there was evidence from which the government could have argued that she was guilty. But here, the nature of the error was such that it was just too prejudicial, and it's hard to say that the jury wasn't infected or affected by the nature of that error. The characterization that this was a confession, that's an unreasonable characterization. She explained she had a very difficult relationship with these people. The slumping could have easily have been, you know, I can't believe that they are accusing me. That's a plausible explanation. Obviously, Mr. Wiley offered one explanation, but the jury didn't have to accept that explanation. And with respect to the phone call, that phone call, the jury could have either believed Ms. Wiley or believed the government's characterization, but they shouldn't have had to have evidence or rely on evidence about the agent's belief. So if I can move on to the minor role argument. Let me ask you something, if you can clarify something in the record, because it appears from the party's briefing that the statement that Josh made indicating that Rachel had taken the pictures didn't come before the jury. Correct. But the actual recorded calls that you submitted or the party submitted as part of the excerpts or record, actually Josh's statement was referenced. So did you present or did the government present redacted calls to the jury, but you just submitted full calls to the court? Or what's in the record before us was actually what was played before the jury? I'm trying to remember, because I, but I believe that the phone call was actually played to the jury. Without objection by the defense. No, there was an objection. With respect to the role issue, the Section 4B1.2, the minor role provision, requires the district court to compare defendant's conduct against those other participants in a case and not just the people that are brought before it. And this is something that's required explicitly in 4B1.2. Here the district court found that Josh had been charged with what he was charged with and Ms. Wiley was charged with what she was charged with and concluded that she was not able to give a minor role reduction. But the guideline itself defines what a participant is as someone who is criminally responsible for the commission of offense but need not have been convicted. So if I understand it correctly, you're really dealing with page 34 of the transcript? Correct. And you're dealing with what the district court said at the top of page 34? Right. Are you suggesting that what the district court said at the top of page 34 is, based on the law, I cannot do this? Or can I read that to suggest that the district court is saying, based on what happened here, she's not qualified? Well, she doesn't compare their roles. She says Josh did what he was charged with and he's serving time and you're charged with what he did. But you didn't answer my question. Are you suggesting that she's saying, by law, she cannot? Or can I read that language to say, based on what I've seen in this particular matter, she couldn't qualify anyway? The latter. Based on what I've seen here, she couldn't qualify? If that's what they're really saying. I'm sorry, the former. My argument is that because she talks about this difference in the charges, which is something that the guideline itself draws a distinction between the charges and the participants, people that are brought before it and people that participate in the offense, that the inquiry she should have engaged in was whether Joshua Wiley participated in the offense, whether he was. So I can focus in on that little bit of time that's spent, page 33, 34, and I didn't find any place else where the district court talked about it. And based on that, I can easily see that the district court was saying, as a legal matter, you cannot get it. Rather than, based on what I know of what happened in this case, you're just not able to get it. Is that what you're saying? Correct. Because it's no question that at that point the judge knows your client is the photographer. The jury's already found that. She was right there. She not only allowed it to happen, she took pictures so the rapist could put them on his computer. The photos she took were the production of child pornography. And yet, at that point, that's what's in front of the judge. It seems to me one could suggest there's no minor role at all. But that's not what she found. And the nature of the minor role doesn't depend on the nature of the crime that is being charged. It focuses in on the relative culpability of the defendant. And what she said was, I'm not able to do that. We tend to compare things and we say, well, what you did was not what your husband did. And here she didn't make any finding as to ñ it doesn't even appear that she found that he was a participant in the offense. And clearly he could have been charged. He'd been prosecuted in military law, but he wasn't. Well, whether he's a participant in the offense is not important. What is important here is if he could be the, if you will, the first person in the whole of the crime. I mean, she could be charged with a different crime and be an aider and a better, and we'd still have to decide whether there was somebody who was, if you will, a participant who had a major role and a minor role, even if charged differently. If the district court had recognized its discretion and had applied the correct legal standard, then we would be in a different posture. But here the district court didn't even recognize that she had to consider her role against Joshua Wiley's because Joshua Wiley hadn't been prosecuted in the present case. Thank you. Your time has expired. Thank you. Go ahead, Counselor. May it please the Court. Andrew Hayden on behalf of the United States. As a preliminary matter, Your Honor, I want to clear up what I think is a slight misconception. We could have done a better job in the brief, but I think it's been discussed about today. There are direct admissions as well as implied in the record. So I would first point the Court to that in the record. The phone calls themselves were provided on disk and can be listened to, and the tone of Rachel Wiley's voice is very explicit. It's arrogant and refutive. But on page 862 of the record, Debbie Wiley says to her, they can't find the camera you took the pictures with, and she says, uh-uh. And then Debbie says again, but the cameras are not the ones you took the pictures with. And Rachel says, right. That's an express admission. Right, so you took an old cell phone and you don't have it in your possession. You trashed it. Yeah, it's gone. And then in addition to the slumping that Judge Gould referenced, Mark Wiley's testimony also was that he asked Rachel Wiley if she had known what was happening to Sierra all along, and her response was yes. So there are express admissions, and that's on page 309 of the supplemental excerpts of record. And then there are, of course, all the implied admissions. And I think one of the confusing things, or not confusing, but one of the challenges is that the defense at this posture in the case seems to still want to argue the facts. And based on the jury's determination, they're to be viewed in the light most favorable to the government because the jury accepted them as implied admissions. So when she says, they have no proof, there's nothing on the pictures, they have no proof, those are now admissions of Gill as well. Circumstantially, slightly more than the direct, but they're admissions. Ms. Aguilar in her argument just now also sort of referenced what's referenced in the brief, that the case was hijacked by the case agent. And respectfully, I think it's just being taken out of context. I think agencies ---- Is it appropriate background investigation information to elicit from the agent, I believe, that Rachel Wiley took these photos? Wasn't that error? It was a poor choice in wording, but I think what Johnson and Silva, the cases cited by the defense support, is the idea that unique factual situations can require background investigation material so that the jury can understand subsequent evidence. And so on direct, the United States tried to carefully craft that, and I think Agent Cishan's comments are being taken chronologically out of context, both in the course of the investigation of Rachel and in the context of the trial. Chronologically, she's saying that early in the summer of 2009, she began to form the belief that she was involved. And that's a ---- perhaps it's not the greatest word to use, but it was a necessary thing because in light of this tragic event, common sense, male perpetrator on a six-year-old child, these photographs, horrific crime, he's been caught. How do you get from there to enable criminal investigative agent from San Diego flying to Kansas City, Missouri, and wiring up the in-laws? And so to bridge that gap, she was trying to provide innocuous things that would sort of help the jury understand both why she took those steps and the items that she selected to be included in Debbie Wiley's accusations, like the camera itself. And I think that on direct, it was meant to be very, very specific. On cross-examination, she ---- Well, I guess I understand your argument. But doesn't your argument go to relevance rather than going to vouching? Absolutely, Your Honor. And that's an important distinction today. There was an objection based on vouching, but there was never an objection based on relevance. There was a comment made the next day at sidebar, but that's not the same thing. And I think what Johnson and Silva, and if I could quote Johnson specifically at page 501 of that opinion, they explain that an agent's state of mind can actually become highly relevant if they're attacked for having some sort of ulterior motives. The defense in this case was to liken it to a painting. They clearly ---- So if, in fact, the objections were not on relevance but were on vouching, doesn't that change the standard of review by which we would look at this? It does, Your Honor. It moves us into the area of plain error, which means ultimately there needs to be a miscarriage of justice, which just isn't available in this case because, as we've explained already, the jury heard expressed and implied admissions along with the other evidence. And it goes without something else that needs to be said in that regard. If anything hijacked the case, it was the tone of Rachel's voice and the jury heard the phone calls. And then, in a fact that's slightly overlooked, the very first defense witness was Elizabeth Tate, Josh Wiley's biological mother. She took the stand and lied, and lied about what she knew in regards to Rachel's involvement, and that was the first thing they heard from the defense. Well, speaking of the recorded calls, can you clarify the record for me? Because Josh's statement that Rachel was the one taking the pictures, it's a highly incriminating piece of evidence. And from the tape that was submitted as part of the excerpt of the record, that was apparently played before the jury? I would like to address it, Your Honor, just to clear it up. In advance of trial, it was anticipated, and I think the best example is Mark Wiley in the context of what his son told him and then his accusation to Rachel, and then I'll explain what happened later. It was anticipated, and the United States did not ask Mark Wiley, what did Josh say to you at the brig? That was never asked, so that his direct hearsay statement was not elicited. What was made clear to the jury was that Mark had gone to San Diego and he had spoken with his son, and several days later, Rachel knew that, and he accuses her. And the reason that that's an important link is because when she's faced with that accusation, what is she thinking? What's relevant to the way she's going to deny the accusation? And it's that Mark has recently been talking to her son, and so the strength of the accusation is real because it's coming from the real perpetrator, perhaps. So in that regard, it's not hearsay because it's part of the accusation, but we anticipated that, and there was a jury instruction given specifically. It's jury instruction 13 on page 834 of the supplemental excerpt of record to avoid the problem with Josh Wiley's statements. Now, it came in in other contexts, and it was our hope and belief that the jury instruction covered those issues, especially with the phone call with Elizabeth Tate. But it ultimately was elicited, and it was asked about extensively on cross by the defense when they asked Elizabeth Tate that information. And to go back to Your Honor, in regards to Agent Sechon, it wasn't a great choice, but the standards should be plain error on relevance, and it wasn't meant to chronologically link to her ultimate belief in the guilt. It was to lay foundation to that trip to Missouri. If Agent Sechon had testified at the end of the case and had sort of been asked based on what you've heard and having heard the phone calls with Debbie Wiley, do you believe she was involved, that would be different. But it was a subtle distinction but an important one. But even if the Court finds that that was a problem or there was some sort of error, it simply just didn't result in a miscarriage of justice. In regards to the statements that were made in closing argument that were referenced sort of linking Sierra's forensic interview, the important thing is that they're also not objected to properly in closing and they're not linked directly. There are two comments in closing about Sierra's forensic interview that are made in rebuttal. The first comment actually is the prosecution urging the jury not to assume what the little girl said. In contrast to what the defense had asserted, she's actually telling the jury that that would be speculation. Do not assume what she said. Three pages later in the transcript, she's dealing with the impeachment of Agent Sechon and she makes the reference and it's not objected to about Sierra's forensic interview. There's no objection at that point, which puts it in the realm of plain error. Ms. Aguilar next addressed minor role. I think one of the things that's missing from the argument today in regards to minor role is that when Judge Sammartino is sentencing Rachel Wiley, minor role, the burden shifts to the defense. They have the burden to establish that minor role is appropriate because their client is substantially less culpable. Well, but what she's arguing, as I understand it, and that's why I questioned her, she's not arguing that this is necessarily a minor role at this point. She's saying the judge did not know he had the right to compare one role to the other and that the testimony on page 33 and 34, or testimony, I guess the judge's words, he didn't testify, on page 33 and 34 say that. In respect to that, I disagree with that interpretation. Well, tell me, I mean, I've got the stuff right in front of me because I concentrated pretty heavy on that to make that decision. I'll be fair, I have a tough time understanding that that judge, in saying what he said there, or the judge said, was saying, well, there's one that has a major role and one that has a minor. What the judge is saying, based on the charges here, I can't look at this legally. I can't look at this. And that's not true, is it? That's not true, Your Honor. I mean, in fact, if you read United States v. Demers, where it says a defendant may be eligible for a minor role adjustment under 3B12, even if he were charged with and convicted of a crime in which he's only a participant, at least where the relevant conduct for the charged crime included more than one person. So if we look at Demers, the judge was wrong. The judge had a right to compare. I think the comments are brief, and I think, more importantly, Judge Sammartino had indicated that she considered all of the arguments, and then she's sort of making this ultimate conclusion. And I think, in one sense, Your Honor, I think your interpretation is obviously a reasonable one in regards to the comments she made. But I think in light of the totality of the sentencing, what she's indicating is she reviewed all of the submissions. She sort of thought about Rachel Wiley. Well, it would be nice if she could have said all of that, because she doesn't go back to this at all. In fact, she says this, and then she moves to other things. And she never goes back to minor role. I think, in total, her comments are relatively brief. And I think Judge Sammartino indicated she had reviewed everything. And I think perhaps it could have been more explicit that she had compared the roles. But I think that's what she was trying to say is that she just couldn't award that deduction because he did what he did, you did what you did, and they're not really one substantially less culpable than the other, especially in light of the fact that at the time of sentencing, Rachel Wiley was still not accepting responsibility. She didn't elocute to the court and express her remorse. She talked about those, and those are pretty clear about where she was going, the good judge. But when it goes to this one, that's the thing that bothers me. Now, it may be that she would not say one had a minor role. I mean, I gave the facts as best I could for your side, suggesting that she wouldn't have said it. But I have a tough time with this stuff, suggesting that I ought to say it. I mean, that is after all the old D.J. gets a chance to make that determination. Understood, Your Honor. And I think generally Judge Sammartino in this case was a very conservative arbiter. And I think one of the themes throughout the defense briefing is just sort of, you know, the door was opened and the United States was allowed to shoot blindly into the night. And one of the things I want to mention today is that's simply just not the case. If you equate the case hypothetically to a painting, the defense cleared the canvas. Nothing about Rachel Wiley outside of the events that happened with Sierra would be known. We wouldn't know that six months prior to Sierra's assault, she was aware that her husband had a sexual interest in children. The jury would not be aware of all the unique sexual behavior in their relationship that would tend to sort of lead one to believe that this was possible, that she had been the photographer. They cleared the slate. And then in opening, they changed course and they tried to strictly define and control a false narrative. And Judge Sammartino and the United States had to respond to that quick shift and all of the comments that there were frequent sidebars. And I think in Mark Wiley's redirect and in the cross-examination of Rachel Wiley, it shows how conservative Judge Sammartino was and that she was guarding against the fairness of the trial. In Mark Wiley's testimony, there was a sidebar before he was redirected, and the United States was actually precluded from discussing the contents of the will and from discussing the contents of the CPS allegations. Because at that point, Judge Sammartino believed and warned the defense that the door was open, but she was going to restrict the United States because she wanted to ensure that Rachel Wiley had a fair trial, and she was being ultra-conservative in that regard. And the same thing happened with the impeachment of Rachel Wiley. Before the United States would go into new things, the United States would often front at sidebar or outside of the presence of the jury what it intended to do. And one of the things that Judge Sammartino did not allow the United States to do was cross-examine Rachel Wiley in regards to her knowledge that her husband had a sexual interest in children prior to Sierra's assault. And so I think Judge Sammartino, although the comments in the sentencing maybe could be more explicit in regards to minor role, I think overall the totality of the case shows that she was very conservative. And I think the important comments in sentencing for Judge Sammartino that are relevant to this Court, as the district court who sat there and viewed the credibility, is that she specifically tells Rachel Wiley in her sentence of her, I considered your testimony. She considered her testimony, and she clearly was of a pivotal role in what sentence she ultimately imposed because she, like the jury, completely rejected it. And that was the risk that Rachel Wiley took under this Court's opinion in United States v. Cordova. When she takes that risk and she puts herself up on the stand, she incurs the risk that the jury will actually reject her testimony and infer the exact opposite. And unless the Court had any additional questions in regards to ‑‑ Do you have any questions? Do you have any further questions, Judge Kuhl? Yeah, well, I guess I have one that you've already talked about. But it's what would be wrong here? I realize this isn't the government side of it, but with sending it back for resentencing with an explication of what the proper standard is on minor role, just to make sure that the judge is sentencing in light of that. Directly, Your Honor, nothing. Because I don't believe, having witnessed the trial and having been a part of the sentencing, I don't believe that Judge Sanmartino's sentence or her determination in regards to role would change at all. I think she considered everything, imposed the sentence that she thought was appropriate, and if the case came back and she needed to be more explicit in regards to comparing Josh Wiley's role to Rachel Wiley's role in this case, I think she would, and it would be consistent with what she's already indicated is sufficient, but not greater than necessary to encompass Rachel Wiley's actions. Which, ultimately, the evidence was overwhelming. At the end of this case, was there a miscarriage of justice that Rachel Wiley took photographs of a 6-year-old being raped in her own marital bed and then admitted to that? There just simply wasn't a miscarriage of justice, and I think Judge Sanmartino's sentence would be the same if remanded and then more explicit in regards to the role determination. Thank you. Thank you very much, Counselor. And, Counselor, we gave you full time, so I think we'll submit the case. This is Case C, or, excuse me, 1250030, United States v. Wiley, and that is submitted. The next case on the calendar are two cases.
judges: Gould, Smith, Nguyen